ANTON E. MULLER, RESPONDENT, v. CHARLES BECK AND
ANOTHER, APPELLANTS.

Submitted March 18, 1920—Decided June 7, 1920.

Where a lease contains a covenant that the lessee will not relet or
underlet the whole or any part of the premises, nor assign the
lease, without the written consent of the lessor, and the usual
option to the lessor to re-enter and relet the premises if they be-
come vacant or deserted during the term, and the defendant va-
cates during the term, the landlord is not bound to seek a tenant
in order to minimize the damage of the lessee.

On appeal from the East Orange District Court.

The plaintiff seeks to recover rent under the terms of a
written lease running from March 1st, 1917, to March 1st,
1920. The lease contained the usual covenant that the lessee
would not relet or underlet the whole or any part of the
premises, nor assign the lease, without the written consent of
the lessor, and the usual option to the lessor to re-enter and
relet the premises if they became vacant or deserted during
the term. The defendants vacated the premises before Au-
gust 1st, 1919, and left the key with the plaintiff. The de-
fendants procured one Bernstein as a prospective tenant, but
the plaintiff refused to accept him. The claim of defendants
is that the plaintiff was bound to accept a proper tenant and
thus mimimize his damages. The trial judge held to the
contrary.

Before Justices SWAYZE and PARKER.

For the respondent, *Lintott, Kahrs & Young.*

For the appellants, *Philip J. Schotland.*

The opinion of the court was delivered by

SWAYZE, J.   There is some conflict in the authorities, and we are embarrassed by a remark in the opinion of this court in *Zabriskie* v. *Sullivan,* 80 *N. J. L.* 673, 675.   The opinion says:   "The premises having been vacated by the tenant, it became the duty of the landlord to rent them in diminution of the damages of the tenant."   That the remark is purely *obiter* is shown by the facts (1) that no question of diminution of damages was raised; judgment was rendered for the full amount of the rent claimed by the landlord, and affirmed by this court; and (2) that the only questions of law raised were the power of the landlord, plaintiff, to rent the property, the estoppel of the tenant to deny the landlord's title, and the necessity of notice by the tenant to terminate the lease.   We think, therefore, we are not bound by this mere *dictum.*   We have, however, in deference to the learned judge who spoke for us in that case examined the question further. The cases he cites do not support the *dictum.*   *Dolton* v. *Sickel,* 66 *Id.* 492, presented the questions (1) whether the evidence justified the trial judge in finding that there was no surrender by the tenant to the landlord, and (2) whether a reletting of part of the premises by the landlord required a finding of an eviction.   The court held that the trial judge had the right under the evidence to find there was no surrender, but that he was required to find that there had been a constructive eviction.   It then held that where the tenant vacated and abandoned the premises, an eviction by reletting was constructive merely and should impose on the landlord no penalty other than that of crediting the tenant with the sum so earned by the property during the term.   This is, obviously, far from holding that the landlord should credit money which the property in fact had not earned.   If the

court had held, as the present plaintiffs ask us to hold, it would have held that the landlord should credit not only the amount actually earned, but the amount he might have earned. The judgment in Dolton *v.* Sickel was affirmed in 68 *Id.* 731. *Meeker* v. *Spalsbury,* 66 *Id.* 60, dealt with the question of constructive eviction, holding that under the facts of the case there was no eviction, and with the question of surrender by operation of law, holding that there was a surrender. These holdings are quite inapplicable to a case where the tenant voluntarily vacates the premises during the term, and to a case where the defendants admit liability to damages but claim that the landlord should have minimized them. Of course, if there had been a surrender there would have been no damages to be minimized, for there would have been no right of action. Meeker *v.* Spalsbury has been cited with approval by the Court of Errors and Appeals. *Miller* v. *Dennis,* 68 *Id.* 320, 323; *Sypherd* v. *Myers,* 80 *Id.* 321; *Stewart* v. *Childs Co.,* 86 *Id.* 648.

The authorities in other jurisdictions are perhaps not as variant as they are supposed to be. We refrain from dealing with the general question of the landlord's supposed liability to find a new tenant or to accept one when offered. This case, like all other cases, must be decided on its own facts. We have to deal with a lease that prohibits underletting or assignment. Such a provision demonstrates that the landlord meant to have a right to choose his tenants, a right which might be of great importance to him in the proper care and management of his property. The tenant had an estate for years, but it was an estate qualified by this right of the landlord to prevent its transfer. The reserved right of the landlord would be of no value if the tenant could vacate the premises and terminate the obligation to pay rent by finding some one who might be willing to take the estate for years. The proposed tenant might be insolvent, or, at best, weaker financially than the lessee; he might be of improper character; or propose to conduct an improper business; or a business that the landlord disliked or feared might in the long run be a

damage to the property. For any of these reasons, or for other reasons or no reason at all, the landlord might properly say: "I do not like the proposed tenant. He cannot have an estate in my property." The landlord in refusing consent is acting within his right expressly reserved by the lease, and such a reservation is inconsistent with the claim that he must accept the new tenant or forego his rent. The terms of the lease are equally inconsistent with the claim that the landlord must make an effort to secure a tenant in order to minimize the damages his present tenant is subject to by reason of his contract. The landlord is authorized to re-enter at his option, but he is not obliged to re-enter or accept a surrender and, until he does, the tenant has an estate with which the landlord may not interfere. It is not for the landlord to speculate on whether it is or is not advisable to seek another tenant. The use of the word "option" means that the landlord has a choice. It would be a novel doctrine that would force him to give his time to hunting someone to contract with him for the purpose of helping the tenant out of a liability to damages which the tenant had brought on himself. Reason is with the holding by the trial judge and the great weight of authority is with him also. The cases are collected in an elaborate note in 14 *Ann. Cas.* 1090.

The judgment is therefore affirmed, with costs.