Jacob Markowitz, J.
Tenant’s attack on landlord’s good faith is fully warranted. Good faith dealing between landlords and tenants is! now read into leases (Tai On Luck Corp. v. Cirota, 35 A D 2d 380, affg. N. Y. L. J., May 25,1970, p. 2, col. 1, app. dsmd. 29 N Y 2d 747, 868; Howard Stores Corp. v. Robison Rayon Co., 36 A D 2d 911, affg. 64 Misc 2d 913; see, also, Douglas Manor House v. Wohlfeld, 66 Misc 2d 265). Landlord’s effort to bring tenant’s lease to an end by subtle device verges on the unconscionable.
In these circumstances, if tenant is deemed to have been in default, and late in curing it, tenant should be relieved of the default, since landlord was not harmed or prejudiced thereby (Sy Jack Realty Co. v. Pergament Syosset Corp., 27 N Y 2d 449, 452, affg. 34 A D 2d 819; Jones v. Gianferante, 305 N. Y. 135). The law abhors forfeiture of leases (220 West 42 Assoc. v. Cohen, 60 Misc 2d 983, 985). Equity has long since granted relief from leasehold forfeitures resulting from nonpayment of rent (3 New York Law of Landlord and Tenant, § 1025). First Nat. Stores v. Yellowstone Shopping Center (21 N Y 2d 630), distinguishable on its facts, does not mandate the contrary.
Moreover, the provision for three days’ notice by mail of the termination of the lease, deemed given when mailed, is so lacking in equity and due process as to be ineffective as a predicate for cancellation of the lease (see 98 Delancey St. Corp. v. Barocas, 82 N. Y. S. 2d 802, 804-805, affd. 275 App. Div. 651). But even if this not be so, landlord’s failure to tie the rent *355 demand to the forfeiture provisions of the lease precludes the use of the three-day notice to terminate the lease.
In the field of contracts generally, a breach must be substantial to authorize termination of the contract. Unfortunately, the law, 11 as to leases is not a matter of logic in vacuo; it is a matter of history that has not forgotten Lord Coke ” (Gardiner v. Butler & Co., 245 U. S. 603, 605). Archaic in it? origins, the effect of this background is still felt. The time has come to bring it up to date; to make the rules governing leases consistent with the rules governing contracts in all other fields.
Landlords and tenants do not generally meet on an equal footing. Land and space are limited and in short supply. Tenants, more often than otherwise, must take inequitable lease provisions as offered, or not get much needed space at all. To strictly enforce provisions of leases in such circumstances is to run counter to all modern thinking.
Leases are no longer conveyances of space for a stated period ; today they partake of service contracts as much as of rental contracts. They call for mutual obligations; they differ little, if at all, from other agreements. In modern times, rules of law applicable to other agreements should also apply to leases.
Touching bottom, what did landlord actually lose by the delay in the payment of tenant’s rent? A given amount of interest. It could have compelled payment of the rent and of the interest by nonpayment proceedings. It chose not to. Instead, it chose surreptitiously to reacquire the space by failing to alert the tenant to the consequences of its acts.
Tenant’s delay in paying its rent was not such a material breach of the lease as to authorize landlord to abort this 15-year lease 9 years before its normal expiration date (Madison 52nd Corp. v. Ogust, 49 Misc 2d 663, 664-665, affd. 52 Mise 2d 935).
The final judgment should be affirmed, with $25 costs.
Samuel M. Gold, J., concurs.