Leonard N. Cohen, J.
Four separate summary proceedings, in which the facts vary but the respective landlord’s motions raise common issues of law, are considered together. (Avenue Assoc. v Buxbaum; Marx v Cotinas; Wouk v Harewood; Seidman v Tyler.) In each, the respondent tenant demands a trial by jury, and the petitioner landlord moves to strike the demand on grounds of a lease "waiver.”
The questions to be decided are: Is there a right to a jury trial in tenant-landlord proceedings? If so, under what circumstances may this right be waived? Are such circumstances present herein?
There are constitutional and statutory rights to trial by jury in civil proceedings.
The Seventh Amendment of the Constitution of the United States provides, "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved”.
This court recognizes the cloud over the applicability of the Seventh Amendment to the States (Walker v Sauvinet, 92 US 90; Pearson v Yewdall, 95 US 294; Minneapolis & St. Louis R. R. Co. v Bombolis, 241 US 211; Melancon v McKeithen, 345 F Supp 1025). However, there is a preferable view by way of dissents, including those of Justices Black, Douglas, Murphy and Rutledge in Adamson v California (332 US 46), which would make all the Bill of Rights applicable to the States; and Melancon v McKeithen (supra [E. Gordon West, J., dissenting]). (Cf. Henkin, "Selective Incorporation” in the Fourteenth Amendment, 73 Yale LJ 74; Fairman, Does the Fourteenth Amendment Incorporate the Bill of Rights? The Original Understanding, 2 Stan L Rev 5; Morrison, Does the Fourteenth Amendment Incorporate the Bill of Rights? The Judi *136 cial Interpretation, 2 Stan L Rev 140; Frankfurter, Memorandum on "Incorporation” of the Bill of Rights Into The Due Process Clause of the Fourteenth Amendment, 78 Harv L Rev 746.)
However, a constitutional resolution of the Federal-as-distinguished-from-State issue is unnecessary here. The Supreme Court in Pernell v Southall Realty(416 US 363) has applied to tenant-landlord summary proceedings its standard for ascertaining whether a right to jury trial exists; within our own jurisdiction the standard may be equally applied to ascertain whether the guarantee of jury trials in summary proceedings exists.
The Supreme Court of the United States in Pernell v Southall Realty (supra) held that the critical element in uncovering the existing right to a jury trial in civil law is whether a proceeding in which legal rights are ascertained and determined, is derived and flows from the basic action at common law. (Curtis v Loether, 415 US 189.) This was applied to a proceeding to evict which had its antecedents in the common-law action in ejectment. (Pernell, supra.)
The court further said that in all the common-law actions for ejectment or recovery of possession of real property in all its variations to evict tenants "for overstaying the terms of their leases, nonpayment of rent, or other breach of lease covenants * * * questions of facts * * * were resolved by a jury.” (Pernell, supra, pp 373-374.)
Eviction proceedings in New York are also derived historically from the common-law possessory remedy of ejectment or its variations.
In New York "At common law the only possessory remedy was ejectment * * * the action was created at common law.” (Practice Commentaries, McKinney’s Cons Laws of NY, Book 49 1/2, Real Property Actions and Proceedings Law, art 7, pp 101 and 104 citing Butler v Frontier, 186 NY 486; Civ Prac Act, art 63, §§ 990 to 1011; Rules Civ Prac, rules 240, 241; Real Property Actions and Proceedings Law, art 6, §§ 601 to 666.) (Pure Strains Farm Co. v Smith, 99 Misc 108; Bayer v Ras, 71 Misc 2d 464.)
From the first New York State Constitution, adopted in 1777 and thereafter in 1821, 1846, 1894 and in 1938, there has been a continuity of constitutional guarantees to a jury trial based on common-law ejectment actions. There is no exception for summary proceedings.
*137 New York’s earliest Constitution in 1777 provided "in all cases in which it has heretofore been used in the colony of New York, [jury trial] shall be established and remain inviolate forever.”
The interim predecessors of the current Constitution provided "trial by jury in all cases in which it has heretofore been used shall remain inviolate forever; but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law.”
Section 2 of article I of the current State Constitution provides: "Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever; but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law.”
In addition, New York has enacted statutory rights to jury trials.
In special proceedings, "Where triable issues of fact are raised, they shall be tried by the court unless, at the time the petition is noticed to be heard, a party demands a trial by jury, in which case trial shall be by jury.” (Real Property Actions and Proceedings Law, § 745, it is noteworthy that this New York statute was acknowledged by the Supreme Court in Pernell v Southall Realty, 416 US 363, 384, n 34, supra.)
Further, "In the following actions, the issues of fact shall be tried by a jury unless a jury trial is waived * * *
"1. an action in which a party demands and sets forth facts which would permit a judgment for a sum of money only;
"2. an action of ejectment * * * or for determination of a claim to real property under article fifteen of the real property actions and proceedings law; and
"3. any other action in which a party is entitled by the constitution or by express provision of law to a trial by jury.” (CPLR 4101.)
"Any provision in a lease, executed after the date of this act [July 12, 1965], that a trial by jury is waived in any action, proceeding or counterclaim brought by either party thereto against the other in any action for personal injury or property damage, is null and void.”(Real Property Law, § 259-c; emphasis added.)
Having found a right to a jury trial in summary proceedings, the crucial issues in dispute are now reached; namely, *138 the circumstances under which a lease waiver of this constitutional right may be enforced and whether such circumstances are presented in the papers submitted on these motions.
At the outset, it is significant that the New York constitutional provision of jury trial waiver, "in the manner to be prescribed by law” has not been implemented by statute. Accordingly, in the absence of such legislative implementation, the manner of any waiver may only be determined by applicable and analogous principles of law.
Tests for the validity of a waiver have been developed in both criminal and civil law.
Foregoing a right can be the result of compulsion or waiver. The absence of compulsion does not imply the existence of a waiver, but where there is the presence of compulsion, in whatever form, it cannot lead to a waiver.
It is clear that waiver of a substantial right must be without compulsion of any kind and flow from and be knowing, understanding, intelligent and intentional and the choice of a free will.
"There must be both the capacity to make an understanding choice and an absence of subverting factors so that the choice is clearly free and responsible.” (Von Moltke v Gillies, 332 US 708, 729 [separate opn Mr. Justice Frankfurter].)
"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver * * * must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of [one alleged to have made a waiver].” (Johnson v Zerbst, 304 US 458, 464; Brown v Walker, 161 US 591; Miranda v Arizona, 384 US 436.)
"We deal with a person who is not equal to the police in knowledge and understanding of the consequences * * * and who is unable to know how to protect his own interests or how to get the benefits of his constitutional rights.” (Gallegos v Colorado, 370 US 49, 54; cf. Haley v Ohio, 332 US 596, 601; Miranda v Arizona, supra; Matter of Joseph S., 62 Misc 2d 329; People ex rel. Pulver v Pavlak, 71 Misc 2d 95.)
To understand further the manner by which a lease waiver of a right may be enforced or denied, it is necessary to look to the courts which have likened leases to other contracts and imply binding warranties of liability and find analogies be *139 tween landlords as sellers of scarce goods and, correspondingly, tenants as consumers of goods and services.
"Our approach to the common law of landlord and tenant ought to be aided by principles derived from the consumer protection cases”. (Javins v First Nat. Realty Corp. 428, F2d 1017, 1079.)
"The time has come to bring it [lease] up to date; to make the rules governing leases consistent with the rules governing contracts in all other fields.” (57 E. 54 Realty Corp. v Gay Nineties Realty Corp., 71 Misc 2d 353.)
"Unless expressly excepted, there is an implied warranty of habitability when a landlord leases premises for residential use.
"The common law rule of caveat lessee should no longer be applied to residential leases.
"It is evident that the rationale behind the common-law rule, which likened a lease to the sale of a chattel and therefore applied the ancient doctrine of caveat emptor, has no rational basis in a modern, urban society.” (Tonetti v Penati, 48 AD2d 25, 26, 29, 30; Morbeth Realty Corp. v Velez, NYLJ, May 15, 1973, p 18, col 8 [warranty of habitability]; Eversman v Okwodu, NYLJ, Feb 25, 1975, p 15, col 4; Seabrook v Commuter Housing Co., 72 Misc 2d 6; Harwood v Lincoln Sq. Apts., 78 Misc 2d 1097; Scott v United States, 12 Wall [79 US] 443, 445.)
The rationale underlying the unenforceability of contractual waivers in leases and otherwise is the firmly established principle of unconscionability or adhesion of a contract or contractual term.
"Where the element of unconscionability is present at the time a contract is made, the contract should not be enforced.” (Williams v Walker-Thomas Furniture Co., 350 F2d 445, 449 [pyramiding of interest in seller’s repossession of goods upon default in payment].)
"Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties * * * which are unreasonably favorable to the other party * * * In many cases the meaningfulness of the choice is negated by a gross inequality of bargaining power.” (Williams v Walker-Thomas Furniture Co. (supra, p 449.) "Inquiry into the relative bargaining power of the two parties is not an inquiry wholly divorced from the general question of uncon *140 scionability, since a one-sided bargain is itself evidence of the inequality of the bargaining parties.” (p 449, n 7). "Did each party to the contract, considering his obvious education or lack of it, have a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print * * * when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all of the terms. In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld.” (p 449).
"There was no bargaining over contractual terms between the parties who, in any event, were far from equal in bargaining power. The purported waiver provision was a printed part of a form sales contract and a necessary condition of the sale. The appellees made no showing whatever that the appellants were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights.” (Fuentes v Shevin, 407 US 67, 95; cf. Overmyer Co. v Frick Co., 405 US 174.)
"The inequality in bargaining power between landlord and tenant has been well documented. Tenants have very little leverage to enforce demands for better housing. Various impediments to competition in the rental housing market, such as racial and class discrimination and standardized form leases, mean that landlords place tenants in a take it or leave it situation. The increasingly severe shortage of adequate housing further increases the landlord’s bargaining power”. (Javins v First Nat. Realty Corp., 428 F2d 1071, 1079, supra, and cases following, e.g., Tonetti v Penati, 48 AD2d 25, supra.)
"Landlords and tenants do not generally meet on an equal footing. Land and space are limited and in short supply. Tenants, more often than otherwise, must take inequitable lease provisions as offered, or not get much needed space at all. To strictly enforce provisions of leases in such circumstances is to run counter to all modern thinking.” (57 E. 54 Realty Corp. v Gay Nineties Realty Corp., 71 Misec 2d 353, 355, supra.)
"The freedom of contract in a free enterprise system presupposes some equality in the bargaining positions of contracting *141 parties * * * Unfortunately, the * * * residential real estate market in New York City, especially Manhattan, allows no such freedom of choice. There is in fact a gross inequality of bargaining power which gives rise to standardized lease forms with some terms unreasonably favorable to the landlord.” (Harwood v Lincoln Sq. Apts., 78 Misc 2d 1097,1099, supra.)
Meeting the criteria of whether the parties dealt with each other freely, with equal bargaining power, and without "subverting” factors, this court takes judicial notice of the critical housing shortage in this city and the negligible housing vacancy rates on which rent control laws are based; a free housing market, and therefore, a free choice, cannot be said to prevail.
Leases involve a necessity of life — namely shelter. Unilaterally drawn, and benefiting the economic advantage of the lessor or offeror, they are presented to the lessee or offeree on a take-it-or-leave-it basis, and therefore contain the general elements of a contract of adhesion.
A landlord, rental agent or superintendent at the management office or at the premises, however well-meaning, when presenting a fine-print lease form, containing a multiplicity of complex landlord rights and tenant duties, couched in language which only a lawyer or real estate professional can understand, to a potential tenant without legal representation, saying, "This-is-just-a-standard-lease-approved-by-the-real-estate-board-It’s- the-one-everybody-signs-We-don’t-make-any-changes-because-there-are- plenty-of-people-who-want-the-apartment-and-the-lease-is- 'as-is’ ” cannot really be heard to say she or he had a reasonable opportunity and capacity to read the lease meaningfully, know its contents, be aware of her or his constitutional rights and to freely negotiate the transaction.
Particularly in the absence of viable alternative space, acquiescence in a complex lease hardly constitutes a knowing, freely contracted waiver of a constitutionally protected right, for "Even the intelligent and educated layman has small and sometimes no skill in the science of law.” (Johnson v Zerbst, 304 US 458, 463, supra.)
It is axiomatic that a contract is construed strictly against the drafter. (See 3 Corbin, Contracts, § 559; 4 Williston, Contracts, §§ 610B, 620, 621; vol 1, § 128.) (Levy v New York Majestic Corp., 3 AD2d 477; David v Manufacturers Hanover *142 Trust Co., 55 Misc 2d 1080, 1082.) This strict rule of construction is certainly applicable to contracts of adhesion.
Applying the adhesion contract rationale, New York courts significantly have eroded the enforceability of waivers generally, including lease waivers of tenant’s rights in summary proceedings; for example, the procedural right of asserting counterclaims and setoffs which do not necessarily have the benefit of constitutional guarantee. (Withattan Realty Co. v H. Abraham, Inc., 18 Misc 2d 239; Levine v Ehrenberg, NYLJ, June 11, 1973, p 18, col 2; Steinberg v Carreras, 74 Misc 2d 32, revd in part 77 Misc 2d 774; Eversman v Okwodu, NYLJ, Feb 25, 1975, p 15, col 4, supra; Seabrook v Commuter Housing Co., 72 Misc 2d 6, supra, [involving inability to deliver occupancy]; Coulston v Pompey Knitting Mills, NYLJ, April 22, 1975, p 17, col 8; Weidman v Tomaselli, 81 Misc 2d 328 affd 84 Misc 2d 782 [right to recover attorney fees upon tenant default]; Colgate Constr. Corp. v Hill, 70 Misc 2d 646 [involving a jury trial waiver in home improvement contract]; Harwood v Lincoln Sq. Apts., 78 Misc 2d 1097, supra; Matter of Meachem v New York Cent. R. R. Co., 8 NY2d 293, 299 [involving waiver of workmen’s compensation].)
A lease waiver of a jury trial constitutional right surely warrants equal if not greater protection against enforceability than procedural counterclaim and setoff waivers and waivers of other substantive rights. For courts have consistently imposed a strong presumption against jury trial waiver and have held all doubts are resolved in favor of jury trials. "[A]s the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver.” (Aetna Ins. Co. v Kennedy, 301 US 389, 393.)
"The right of trial by jury is of ancient origin, characterized by Blackstone as * * * 'the most transcendent privilege which any subject can enjoy.’ (Bk 3, p 379); * * * Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.” (Dimick v Schiedt, 293 US 474, 485, 486.)
"We do not presume acquiescence in the loss of fundamental rights.” (Ohio Bell Tel. Co. v Comm., 301 US 292, 307.)
"Since1 the right to jury trial is a constitutional one, however * * * that discretion is very narrowly limited and must, *143 wherever possible, be exercised to preserve jury trial.” (Beacon Theatres v Westover, 359 US 500, 510.)
"A right so fundamental and sacred to the citizen [as trial by jury] whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts.” (Jacob v New York, 315 US 752; Dairy Queen v Wood, 369 US 469.)
Accordingly, "waivers of the [jury trial] right are always strictly construed and are not to be lightly inferred or extended by implication” (Barrow v Bloomfield, 30 AD2d 947; Levy v New York Majestic, supra; Ersaid Realty Corp. v Samuels, 92 NYS2d 897, 899 [City Court of Mt. Vernon, 1949], citing 31 Am. Jur., § 47, p 592.)
Moreover the constitutional nature of the right places a "necessarily high” burden of proof on the party asserting the waiver. (Matter of Joseph S., 62 Misc 2d 329.)
The dissent in Levine v Ehrenberg (NYLJ, June 11, 1973, p 18, col 2, supra) is noteworthy for its distinction between waiver of setoff or counterclaim, procedural in nature, as against substantive rights which embrace a jury trial.
The landlord movants rely on a line of New York decisions which enforce jury trial lease waivers under certain circumstances involving litigation brought solely under such leases or in the absence of statutory prohibitions. (Rasch, Landlord & Tenant, Summary Proceedings [2d ed], § 1344 and the cases cited therein.)
However, these are distinguishable, inapplicable and no longer appear to be controlling. Some concern commercial property; most predate the Supreme Court Pernell decision (supra) and the judicial trend regarding the contractual nature of leases; all are inconsistent with the unenforceability of unconscionable waivers generally and lease waivers other than jury trial rights such as counterclaims and setoffs; others fail to recognize the significance of a constitutional right as involved herein and ignore the strong presumption against the waiver of such right; almost all fail to deal with the crucial issue of a lease jury trial waiver in view of the critical housing shortage and criteria set forth herein to satisfy such relinquishment.
Although the validity of all tenant lease waivers in standard form leases, in and of themselves, are thus cast in doubt, it is unnecessary for a disposition of these four proceedings to strike down the enforceability of all such waivers, if not the *144 leases themselves. For the issues here relate solely to the relinquishment or waiver of constitutional and statutory rights of a jury trial.
The court is mindful of the argument that a conflict may exist between speedy justice and the right to a jury trial but, as stated by the Supreme Court of the United States, this is of no consequence. "Some delay, of course, is inherent in any fair-minded system of justice. A landlord-tenant dispute, like any other lawsuit, cannot be resolved with due process of law unless both parties have had a fair opportunity to present their cases. Our courts were never intended to serve as rubber stamps for landlords seeking to evict their tenants, but rather to see that justice be done before a man is evicted from his home.” (Pernell v Southall Realty, 416 US 363, 385, supra.)
In the four instant proceedings sole reliance in support of each motion striking the jury demand is placed on the lease waiver itself. Lacking are facts and circumstances sufficient to rebut the strong presumption against waiver of a jury trial and meeting the criteria for such a waiver as set forth herein.
In Marx v Cotinas and Avenue Assoc. v Buxbaum the relevant standard form lease clauses relied upon by the landlord are identical and provide for a bilateral jury trial waiver "on any matters whatsoever arising out of or in any way connected with this lease, the tenant’s use and occupancy of said premises and/or any claim for injury or damage.” This clearly violates section 259-c of the Real Property Law which provides: "Any provision in a lease * * * that a trial by jury is waived * * * in any action for personal injury and property damage, is null and void.” (Emphasis added.) The statutory language embraces "any” lease provision. Thus the clause, strictly construed against the landlord as drafter, cannot be asserted in any action. The entire clause is therefore null and void, particularly as the proscribed waiver is intertwined with a variety of other dubious waivers.
In the Marx proceeding, the tenant concededly never received a signed lease from the landlord although it may have been filed with the appropriate city department, yet the dates of the term are missing from that filed document and therefore the lease did not come into existence. In the Avenue Assoc, proceeding, the respondent claims to be a former tenant and not bound by the lease terms and counterclaims for rent overcharges, failure to paint and interference with contractual arrangements with subtenant.
*145 In Wouk v Harewood the relevant standard form lease clause provides: "it is expressly agreed by and between the parties hereto that in the event of a dispute * * * whether concerning the lease or otherwise, which * * * shall result in action at law * * * or a proceeding by one party against the other and whether the form of the claim advanced is either in the nature of a complaint or a counterclaim in the action or proceeding * * * Tenant agrees to and hereby does waive any rights he may have to a trial by jury.” Other clauses provide for a unilateral tenant waiver of rights to "notice”, "proceedings,” of the landlord’s right to re-enter and to possession; and barring interposing any setoff and counterclaims in nonpayment cases. The unilateral nature of the tenant’s waiver of rights, clearly proscribed under law, marks the unconscionability of the provisions on their face. In fact, according to the terms of this lease, the landlord has granted to itself a "self-help” right of eviction without any process of law whatsoever within the same provision as the tenant’s jury trial waiver. By commencing this proceeding, it could be argued, the landlord has waived the right to assert the entire clause including tenant’s jury trial waiver.
In Seidman v Tyler (supra) the lease included similar unilateral jury trial waivers and relinquishment of other tenant rights, and here, too, these provisions are unenforceable on their face.
A determination of these motions is not based only on these disabilities but also on the insufficiency of an alleged lease waiver to justify enforcement of the abandonment of the right to trial by jury in accordance with all the foregoing.
The party asserting a waiver, particularly one which it prepared (the landlord in these cases), must assume the burden of submitting appropriate facts and. circumstances in accordance with the criteria set forth to justify a waiver of the constitutional and statutory right to trial by jury. The moving parties have failed in this respect.
Accordingly, each of the motions to strike the tenant’s jury demand is denied. The petitioners may, however, move, on notice, promptly but within at least five days prior to the adjourned date, if they deem it advisable, for an evidentiary preliminary hearing (or upon consent by submission of proper papers), before the Judge then sitting in Part 49 or to the part to which these matters may then be assigned, setting forth facts and circumstances in compliance with all the waiver *146 criteria as provided in this decision. The four proceedings are adjourned to the Trial Calendar, Part 49, for June 2, 1975, for said hearing or jury trial.